

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 13, 2015**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 13-36126-BJH |
| WILLIAM ROWLAND EDWARDS, § | (Chapter 7) |
| JR., § | |
| § | Related to Dkt. Nos. 61 & 233 |
| DEBTOR. § | |

### MEMORANDUM OPINION AND ORDER ON OBJECTIONS TO
### DEBTOR'S CLAIMED HOMESTEAD EXEMPTION

Before the Court are objections to William Rowland Edwards' (the "**Debtor**") claimed homestead exemption in a residence located at 6502 Trammel Drive, Dallas, Texas (the "**Trammel Property**") filed by Chapter 7 Trustee Robert Yaquinto, Jr. (the "**Trustee**") and the Ad Hoc Probate Creditors' Committee. A joinder in the Ad Hoc Probate Creditors' Committee's objection was filed by Comerica Bank; however, as reflected by the Stipulation filed at Docket No. 296, the Debtor was able to resolve Comerica's objection.

An evidentiary hearing on the remaining objections was held on January 5, 2015. At the conclusion of the hearing, the Court directed additional briefing on the evidentiary issue of whether pictures taken at the Trammel Property shortly before the hearing were admissible to show the Debtor's alleged use of the Trammel Property as his homestead as of the petition date (November 27, 2013) (the "**Petition Date**"). Those briefs were filed on January 9th, and the matter is now ripe for ruling.

As explained more fully below, the Court concludes that the Debtor has met his burden to establish that (i) the Trammel Property was his homestead as of the Petition Date, and (ii) the Trammel Property was properly claimed as exempt in his bankruptcy case.

## JURISDICTION AND VENUE

The U.S. District Court for the Northern District of Texas has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334. Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151 grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28. Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts for either entry of a final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings).

So, as relevant here, this Court exercises jurisdiction over the Debtor's Chapter 7 bankruptcy case pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984. Venue is proper here under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Thus, the Court concludes that it has the statutory and Constitutional authority to enter this Memorandum

Opinion and Order determining whether the Trammel Property was the Debtor's homestead on the Petition Date.

## LEGAL ANALYSIS

First, a preliminary matter must be addressed. Specifically, the Court must rule on the Trustee's objection to the admission of certain pictures of the Trammel Property into evidence. At the hearing, the Debtor's counsel sought to introduce into evidence Debtor's Exhibits 15 – 62, which are comprised of various photographs taken at the Trammel Property approximately a week prior to the hearing. As articulated in the Debtor's post-hearing brief, the purpose of the photographs is "to further show proof of overt acts of possession over the Trammel Property which were indicative of holding out the property as a homestead." Debtor's Brief on the Matter of Admissibility of Photographs Offered into Evidence [Dkt. No. 305] ¶ 1. The Trustee objected to admission of the photographs on the grounds that they were not relevant because, as photographs taken over a year postpetition, they do not accurately reflect the appearance of the Trammel Property as of the Petition Date. Trustee's Post-Hearing Brief Regarding Admission of Evidence [Dkt. No. 306] ¶¶ 6-7. As explained below, the Court will deny the objection and admit Exhibits 15-62 into evidence.

At the hearing, the Debtor's counsel elicited testimony from two witnesses who lived at the Trammel Property, both as of of the Petition Date and the date the photographs were taken – the Debtor and his roommate, Chauncey Leopardi ("**Leopardi**"). In reviewing the proposed exhibits, the witnesses testified that they recognized and were familiar with the objects depicted in the photographs, and that the photographs were a fair and accurate representation of both the Trammel Property and the personal property located at the Trammel Property as of the Petition

Date.[1]  Although there were some discrepancies in the photographs due to the passage of time, those discrepancies were adequately identified and explained.  This testimony properly authenticated the photographs.  FED. R. EVID. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Further, when coupled with the testimony at the hearing, the photographs showed the Debtor's occupancy and use of the Trammel Property as of the Petition Date, making the exhibits relevant to the issue before the Court.  *See* FED. R. EVID. 401, 402.  Thus, the Court will admit Exhibits 15-62 into evidence.[2]

The Court will now turn to the merits of the objections.  Section 522 of the Bankruptcy Code determines what property a debtor may exempt.  In Texas, a debtor may select between a specific list of federal exemptions or choose the applicable state exemptions.  As reflected in his Amended Schedule C, the Debtor selected the Texas exemptions scheme and claimed the Trammel Property as exempt under the Texas Property Code.

Homestead properties are afforded special protections under the Texas Constitution.  Because these rights protect citizens from losing their home, courts liberally construe constitutional and statutory homestead provisions to protect the homestead.  *See Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 807 (Tex. App. – Austin 2004, pet. denied) (citing cases).  Generally, whether a property qualifies as a homestead is a fact question that is determined by the court as of the date of the debtor's bankruptcy filing.  *AG Acceptance Corp. v. Veigel,* 564 F.3d 695, 698 (5th Cir. 2009).

---

[1] The Debtor testified with respect to each photograph; Leopardi testified with respect to some, but not all, of the photographs.

[2] The Court's decision to admit the photographs into evidence is of no consequence here because the Court would have made the same findings and conclusions with respect to the Trammel Property without considering the photographs at all based upon the oral testimony of Edwards, Leopardi, and Barker.

**MEMORANDUM OPINION AND ORDER**  4

A debtor has the initial burden of establishing homestead status. *See Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003). This is accomplished by presenting evidence of both overt acts of homestead usage and the intent to claim the property as a homestead. *Id*. As explained by the Fifth Circuit in *Perry*, this burden can be met by proving actual use and occupancy of the home. *Id.* (citing *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992) ("Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact."); *In re Kennard*, 970 F.2d 1455, 1459 (5th Cir. 1992) (noting that intent to claim a property as homestead is presumed where the homestead claimant resides on the property); *In re Claflin,* 761 F.2d 1088, 1092 (5th Cir. 1985) (finding that use and occupancy of the property establishes a homestead)).

Once a debtor has made a *prima facie* case in favor of homestead status, the objecting party has the burden of demonstrating by a preponderance of the evidence that the homestead rights have been terminated. *See* FED. R. BANKR. P. 4003(c); *Perry*, 345 F.3d at 311; *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301 (5th Cir. 2012) (unpublished). Under Texas law, homestead rights may be lost only through death, abandonment, or alienation. *In re Moody*, 862 F.2d 1194, 1198 (5th Cir. 1989). Indeed, according to the Fifth Circuit, this Court "must uphold and enforce the Texas homestead laws even though in doing so we might unwittingly assist a dishonest debtor in wrongfully defeating his creditor." *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992).

Thus, under this framework, the Court must determine whether the Debtor presented sufficient evidence to show that, as of the Petition Date, there were overt acts of (i) his use of the Trammel Property as his homestead, and (ii) his intent to claim the Trammel Property as his homestead. The objectors argue that the Debtor has failed to meet his burden because, as of the

**MEMORANDUM OPINION AND ORDER**                                                                                                                    **5**

Petition Date: (i) the Debtor lived with his long-term girlfriend at her home located at 10717 St. Lazare, Dallas, Texas (the "**Lazare Property**"), and not the Trammel Property; (2) it is the address of the Lazare Property that appears on the Debtor's driver's license (until recently when he had a new driver's license issued with the address of the Trammel Property) and as the address listed on his bankruptcy petition, tax returns, and various bills; (3) the Debtor receives mail at the Lazare Property; (4) the Debtor never filed documents with Dallas County prepetition claiming the Trammel Property as his homestead; and (5) the Debtor failed to list the Trammel Property as exempt on his initial Schedule C filed with the Court.

At the hearing, the Debtor was able to explain and clarify these issues, which will be addressed in turn. First, the record shows that, although the Debtor has spent multiple nights per week at the Lazare Property for many years, the Lazare Property is owned by his long-time girlfriend, Katy Barker ("**Barker**"). When the Debtor stays at the Lazare Property he does so as Barker's guest and, as she testified, she could ask him to leave at any time. In fact, it was the Debtor's status as Barker's guest, coupled with tension in his relationship with her, that ultimately prompted the Debtor to begin using the Trammel Property as his homestead. Additional background is necessary to put this finding into context.

As reflected in his Schedule A, the Debtor owned multiple homes on the Petition Date. At the hearing, the Debtor testified that he has traditionally rented those properties, including the Trammel Property, to third parties. In 2012, however, the Trammel Property became vacant. During this same time, the Debtor was involved in very contentious civil litigation with various family members, which ultimately resulted in a substantial judgment being entered against the Debtor. Around this same time, the Debtor was also criminally indicted. The Debtor testified that his situation was like a "pressure cooker," and that his relationship with Barker became

shaky as a result. The Debtor further testified that he understood that he was staying at the Lazare Property at Barker's discretion, and he decided it would be in his best interests to have a home of his own so that he would not have to worry about being "kicked out" of the Lazare Property. Thus, he moved into the Trammel Property in 2012 after its then-current tenant moved out. According to the Debtor, as of the Petition Date, he lived at the Trammel Property and he had clothing, furniture, tools, equipment, and other assets at the Trammel Property. While he did have some assets at the Lazare Property, the bulk of his things were at the Trammel Property. And, although there was conflicting testimony regarding the number of nights the Debtor slept at the Trammel Property, versus staying with Barker, the evidence showed that, at the very least, the Debtor slept at the Trammel Property 1-2 nights per week.

The Debtor's testimony was bolstered by Leopardi's testimony. Leopardi testified that he moved into the Trammel Property in approximately November 2012. At that time, the Debtor was living there with his son. When the Debtor's son moved out, Leopardi moved in and began occupying the vacated room. Leopardi testified that, when he moved into the Trammel Property, Edward's was staying there a varying number of nights per week, depending on how much time he spent with Barker, but that the Debtor was living at the Trammel Property. Per Leopardi, when he moved in, the Trammel Property already contained the types of items one would normally see in an occupied home – clothing, food, furniture, a washer and dryer, vehicles, tools, and similar items, all of which were owned by the Debtor. Thus, although the evidence is unclear as to whether the Debtor was spending more nights per week at the Lazare Property or the Trammel Property, the Court finds that this number is not determinative in showing the Debtor's intent that the Trammel Property serve as his homestead. The evidence clearly showed that (i) the Debtor was living at the Trammel Property as of the Petition Date, (ii) he considered

the Trammel Property as his homestead, and (iii) his time at the Lazare Property was as Barker's guest.

Further, after Leopardi moved in, but before the Petition Date, the Debtor built a coop on the Trammel Property in which he keeps various birds and fowl. The Trustee's counsel conceded at the hearing that this type of improvement to the Trammel Property is objective evidence of the Debtor's intent to claim the Trammel Property as his homestead.

Second, the fact that the Debtor used the address of the Lazare Property as his mailing address on various documents and his driver's license does not disprove his intent to claim the Trammel Property as his homestead. As the Debtor testified, prior to using the address of the Lazare Property, he used a P.O. Box because he lived in different places. He did not receive sufficient mail to check the box on a regular basis, so he changed his mailing address to the Lazare Property and he continues to use that address because he is there on a regular basis. The Debtor's decision to use the address of the Lazare Property, versus a P.O. Box, or, later, the address of the Trammel Property, as his mailing address does not change the fact that he lived at, and had improved, the Trammel Property as of the Petition Date, showing both overt usage and his intent that the Trammel Property serve as his homestead.

At the hearing, the objecting parties pointed the Court to the Debtor's deposition testimony given in prior litigation to disprove the Debtor's intent to use the Trammel Property as his homestead, including the Debtor invoking his Fifth Amendment right when questioned whether he owned the Lazare Property. The Court, however, found the Debtor's prior testimony vague and insufficient to show an actual conflict between the Debtor's prior testimony and his testimony at the hearing. Further, the Court does not find the fact that the Debtor invoked his Fifth Amendment right when asked whether he owned the Lazare Property relevant to the issue

**MEMORANDUM OPINION AND ORDER** 8

currently before this Court. Both the Debtor and Barker testified that Barker owns the Lazare Property and no evidence to the contrary was introduced.

Third, the fact that the Debtor failed to file prepetition documents with Dallas County claiming the Trammel Property as his homestead is not determinative, as no specific writing is required to prove a property's homestead status. *See Ramsey v. Davis*, 261 S.W.3d 811, 817 n.1 (Tex. App. – Dallas 2008, pet. denied) (stating that county records relating to homestead exemption are not determinative of homestead status); *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App. – Houston [1st Dist.] 1983, no writ) (stating that no specific writing is needed to claim homestead status).

Finally, the Court finds that the Debtor's failure to list the Trammel Property on his initial Schedule C filed with the Court on December 23, 2013 does not prevent the Debtor from claiming the Trammel Property as his homestead. As explained at the hearing, failure to initially list the Trammel Property as exempt was an oversight that was promptly corrected by an Amended Schedule C filed on January 8, 2014.

In further support of their objections, the objectors argue that the Debtor should be estopped from claiming the Trammel Property as his homestead because, in 2005, he signed loan documents with Comerica Bank in which he expressly disclaimed the Trammel Property as his homestead. The Court does not find this argument persuasive either. Notably, the Comerica documents were signed while the Debtor was using the Trammel Property as one of his several rental properties and before his decision to move into the Trammel Property and consider it his homestead. Moreover, the loan documents at issue were between the Debtor and Comerica. As reflected in the Stipulation filed with the Court and announced on the record at the hearing,

Comerica's objection to the Debtor's claimed homestead objection on that very ground has been resolved.

Overall, the evidence clearly shows that, as of the Petition Date, the Debtor owned the Trammel Property, he lived in and kept the majority of his assets at the Trammel Property, he had improved the Trammel Property, and he felt it was necessary to maintain the Trammel Property for himself so that he would have a permanent residence and not be forced to depend on his status as Barker's guest for his shelter. Through these actions, the Debtor exhibited overt acts of homestead usage that clearly reflected his intent that the Trammel Property serve as his homestead. Thus, the Court finds that the Debtor has met his burden to establish the Trammel Property as his homestead.

Because the Debtor has met his burden to establish the homestead status of the Trammel Property, the burden shifts to the objectors to show by a preponderance of the evidence that the homestead exemption was not properly claimed. The objectors, however, did not meet this burden. As previously discussed, once established, the homestead right may only be lost through death, abandonment, or alienation. The objectors have not alleged, nor is there any evidence in the record, that any of these events have occurred. Thus, the objectors have failed to meet their burden.

For these reasons, the Court will overrule the objections to the Debtor's claimed homestead exemption in the Trammel Property.

**SO ORDERED.**

# # # END OF MEMORANDUM OPINION AND ORDER # # #